CITY OF MUNCIE, Appellant
(Plaintiff Below),

v.

UNITED NATIONAL INSURANCE
COMPANY, Appellee
(Defendant Below).

No. 27A04-9003-CV-134.

Court of Appeals of Indiana,
Fourth District.

Jan. 17, 1991.

John M. Feick, Cross, Marshall, Schuck, DeWeese, Cross & Feick, Muncie, for appellant.

Joseph Stalmack and Daniel A. Sawochka, Galvin, Stalmack & Kirschner, Hammond, for appellee.

CONOVER, Judge.

Plaintiff–Appellant City of Muncie (Muncie) appeals the trial court's grant of summary judgment in favor of Defendant–Appellee United National Insurance Company (United).

We affirm.

The sole issue Muncie presents for our review is whether the trial court's grant of summary judgment was proper when it found the parties' insurance policy precluded coverage for the type of injury involved.

James B. Carey (Carey) became the Mayor of Muncie in January, 1984. After taking office, he consulted with city attorneys and then discharged eleven city employees based on their political affiliation. The discharged employees filed a complaint in the United States District Court for the Southern District of Indiana, Indianapolis Division, alleging violations of their constitutional rights. The Honorable Judge William Steckler granted summary judgment in favor of seven of the eleven plaintiffs, concluding these seven plaintiffs had been deprived of constitutional rights as guaranteed by the First and Fourteenth Amendments. The court further concluded these employees held neither policy making nor confidential positions and were terminated based solely on their party affiliation or political activity. (R. 12, 14).

In July, 1987, Muncie filed a complaint against United National Insurance Company and Insurance & Risk Management (IRM), a partnership, alleging Muncie held a valid insurance contract with IRM and underwritten by United, which covered both the defense of Muncie in the federal action as well as the resulting damages. IRM and United, individually, filed motions for summary judgment which the trial court granted. In granting summary judgment, the trial court found coverage for the acts in question was precluded by the language of the contract. Muncie appeals

from the motion granted in favor of United.

Summary judgment is appropriate only in limited situations. Ind.Trial Rule 56 provides in part

(C) *Motion and Proceedings Thereon.*

... The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, admissions and affidavits filed pursuant to Trial Rule 5(D), together with any testimony show that there is *no genuine issue as to any material fact,* and that *the moving party* is entitled to judgment *as a matter of law.* ...

(E) *Form of Affidavits—Further Testimony—Defense Required.* ...

When a motion for summary judgment is made and *supported as provided in this rule,* an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, *if appropriate,* shall be entered against him.... (Emphasis supplied).

Thus, the moving party carries the burden of establishing:

(a) there is no issue as to any material fact, and

(b) he is entitled to judgment as a matter of law.

*Creighton v. Caylor–Nickel Hospital, Inc.* (1985), Ind.App., 484 N.E.2d 1303, 1306, *reh. denied., trans. denied.* The moving party must fulfill these two requirements before any burden shifts to the nonmovant. *Id.* The nonmovant may rest upon his pleadings until the moving party establishes no genuine factual issue exists. *Kahf v. Charleston South Apartments* (1984), Ind.App., 461 N.E.2d 723, 729, *reh. denied, trans. denied.* If, however, the moving party successfully demonstrates no genuine issue exists, the nonmoving party must show the presence of such a fact to stave off summary judgment. *Fort Wayne Community Schools v. Fort Wayne Education Association, Inc.* (1986), Ind.App., 490 N.E.2d 337, 339; *Co-*

*nard v. Waugh* (1985), Ind.App., 474 N.E.2d 130, 134. In doing so, the nonmoving party may not merely rest upon his pleadings, but his response must set forth specific facts indicating an issue of material fact exists. *Popp v. Hardy* (1987), Ind.App., 508 N.E.2d 1282, 1284; *Fort Wayne Community Schools, supra,* at 340; T.R. 56(E). If the nonmovant fails to meet his burden, summary judgment may be granted. *Williams v. Lafayette Production Credit Association* (1987), Ind.App., 508 N.E.2d 579, 582, *reh. denied; Conard, supra,* at 134; T.R. 56(E).

When reviewing a grant of summary judgment motion, we stand in the shoes of the trial court. *Lafary v. Lafary* (1985), Ind.App., 476 N.E.2d 155, 158. All evidence must be construed in favor of the nonmovant and all doubts as to the existence of a material issue must be resolved against the movant. *Penwell v. Western & Southern Life Ins. Co.* (1985), Ind.App., 474 N.E.2d 1042, 1044. Even if facts are not in dispute, summary judgment is inappropriate if conflicting inferences arise. *Board of Aviation Commissioners of St. Joseph County v. Hestor* (1985), Ind.App., 473 N.E.2d 151, 153.

■ Summary judgment is not a substitute for a trial to resolve factual disputes. Though the trial court may believe the nonmovant will be unsuccessful at trial, summary judgment should not be granted where material facts are disputed or conflicting inferences arise. *Grimm v. F.D. Borkholder Co., Inc.* (1983), Ind.App., 454 N.E.2d 84, 86.

Muncie contends the policy language does not preclude coverage and thus, the trial court erroneously granted summary judgment. Further, Muncie posits summary judgment should be granted in its favor instead. Muncie maintains although the terminations were intentional, violation of constitutional rights was not. Muncie maintains Indiana law requires more specificity between the intentional act and the outcome than was demonstrated and thus, Muncie's acts were covered by the policy. Therefore, Muncie contends the personal injuries sustained were not intentional and

thus, United was required to defend the action and cover the resulting liability. We disagree.

The present dispute centers around the contract language defining "occurrence" as it pertains to either COVERAGE C (errors or omissions liability) or COVERAGE D (personal injury liability). The policy defines "occurrence" as follows

... as respects COVERAGE C, "occurrence" means any actual or alleged errors or omission by an Insured during the policy term, which results in injury or damage neither expected nor intended from the standpoint of the Insured; as respects COVERAGE D, "occurrence" means any injury or damages sustained during the policy term by any person or organization and arising out of personal injury as defined herein. (R. 95).

Errors and omissions, as defined by the policy, means "misfeasance, malfeasance or nonfeasance by any Insured." (R. 94).

Personal injury is defined by the policy as

(e) discrimination, not committed by or at the direction of the Named Insured, when insurance therefor is permitted by law. (R. 95).

■ Under Indiana law, if the language in an insurance policy is clear and unambiguous, it should be given its plain and ordinary meaning. *Eli Lilly & Company v. Home Insurance Company* (1985), Ind., 482 N.E.2d 467, 470, *cert. denied,* (1987), 479 U.S. 1060, 107 S.Ct. 940, 93 L.Ed.2d 991. In insurance policies an ambiguity is not established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party. *Sharp v. Indiana Union Mutual Insurance Co.* (1988), Ind. App., 526 N.E.2d 237, 239, *reh. denied, trans. denied.* The language of the policy must be reasonably construed by the court which may not find coverage unless the language of the policy admits liability. *Stockberger v. Meridian Mutual Insurance Co.* (1979), 182 Ind.App. 566, 395 N.E.2d 1272, 1277. An insurance company is free to limit its liability in any manner not inconsistent with public policy, and an

unambiguous exclusionary clause is ordinarily entitled to construction and enforcement. *West American Insurance Co. v. McGhee* (1988), Ind.App., 530 N.E.2d 110, 111, *reh. denied, trans. denied.* This is also true for clauses that exclude liability for acts intentionally caused by the insured, since it is sound public policy to not permit insurance against harms that a person may intentionally cause. *Id.*

Our supreme court most recently discussed the definition of intent in *Allstate Insurance Co. v. Herman* (1990), Ind., 551 N.E.2d 844. In its discussion the court quoted from *Home Insurance Company v. Neilsen* (1975), 165 Ind.App. 445, 332 N.E.2d 240 and held the word "intentional"

... refers instead to the volitional performance of an act with an intent to cause injury, although not necessarily the precise injury or severity of damage that in fact occurs.

*Allstate,* at 845. Furthermore, in *Neilsen,* the court held an intention to cause injury can be established either by showing an actual intent to injure or by "showing the nature and character of the act to be such that intent to cause harm to the other party must be inferred as a matter of law." *West, supra,* at 111, *Neilsen, supra,* 332 N.E.2d at 244.

■ Muncie argues the federal district court's summary judgment finding does not imply intentional deprivation. Muncie relies on *Parratt v. Taylor* (1981), 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420, for the proposition 42 U.S.C. § 1983 allows recovery for Fourteenth Amendment violations committed negligently rather than intentionally. However, in *Daniels v. Williams* (1986), 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662, a § 1983 case decided prior to the federal district court action from which this controversy stems, the United States Supreme Court stated

Upon reflection, we agree and overrule *Parratt* to the extent that it states that mere lack of due care by a state official may "deprive" an individual of life, liberty, or property under the Fourteenth Amendment.

In its discussion of *Parratt* and the question of negligence, the court went on to state

    .... This history reflects the traditional and common-sense notion that the Due Process Clause, like its forebear in the Magna Carta, was "intended to secure the individual from the arbitrary exercise of the powers of government." ... Far from an abuse of power, lack of due care suggests no more than a failure to measure up to the conduct of a reasonable person. To hold that injury caused by such conduct is a deprivation within the meaning of the Fourteenth Amendment would trivialize the centuries-old principle of due process of law. (Citation omitted).

*Daniels, supra,* 106 S.Ct. at 665. The Due Process Clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property. *Id.,* at 663.

     In the federal district court action relevant to the present case, the court granted summary judgment in favor of the discharged employees. In order to grant summary judgment in favor of the terminated employees, the federal district court must have found the Mayor's acts, which resulted in the deprivation of constitutional rights of several of the employees, to be intentional acts. Muncie's acts found by the federal district court to be intentional cannot now be claimed to be negligent.

As additional support for the trial court's grant of summary judgment, we note the case of *Town of South Whitley, Indiana v. Cincinnati Insurance Company* (N.D.Ind. 1989), 724 F.Supp. 599. In *Town of South Whitley,* the municipality brought a declaratory judgment action against its insurance carrier after the insurance carrier notified the municipality no coverage would be provided under a commercial umbrella liability policy against a claim from an individual [Eldridge] alleging the town illegally discriminated against him by refusing to hire him due to his age. The individual claimed constitutional violations of due process, equal protection and the Indiana Age Dis-

crimination in Employment Act. The insurance policy defined "occurrence" as

    ... an accident, or a happening or event, or a continuous or repeated exposure to conditions which occurs during the policy period which unexpectedly or unintentionally results in personal injury, property damage or advertising liability....

*Id.,* at 602. The court granted the insurance company's cross motion for summary judgment and stated

CIC is correct in its contentions that Eldridge's claims for constitutional violations brought pursuant to § 1983 require proof of discriminatory intent. Under existing federal law, a Due Process claim is treated as an intentional tort.... A plaintiff making a due process claim must show that the intentional actions of the defendant caused a constitutional deprivation. Absent evidence of the defendant's intentional misconduct, there can be no Due Process violation.... Therefore, CIC is not required to indemnify the Town of South Whitley for any liability which may be assessed against the town on Eldridge's § 1983 claims for violation of Due Process and Equal Protection. The clear language of the insurance policy at issue provides coverage only for acts "which unexpectedly or unintentionally" resulted in injury. Since any liability assessed against the Town of South Whitley on Eldridge's § 1983 claims would mean that the acts were intentional, coverage is precluded. (Citations omitted).

*Id.,* at 602–603.

Therefore, based upon the above, we agree summary judgment was properly granted in favor of United.

Affirmed.

CHEZEM and STATON, JJ., concur.