Willie J. JACKSON, Appellant–Plaintiff,

v.

Timothy A. JONES and Illinois Farmers Insurance Company, Appellees–Defendants.

No. 49A02–0305–CV–390.

Court of Appeals of Indiana.

Feb. 27, 2004.

156

Duane C. Martin, James E. Waters, Miller, Waters, Martin & Hall, Indianapolis, IN, Attorneys for Appellant.

Laura S. Reed, Riley, Bennett & Egloff, LLP, Indianapolis, IN, for Illinois Farmers Insurance Company.

## OPINION

KIRSCH, Judge.

Willie J. Jackson appeals the trial court's grant of summary judgment in favor of Illinois Farmers Insurance Company ("Farmers") following Farmers' denial of coverage to Jackson. Jackson, who was injured by an uninsured motorist while operating a government-owned vehicle in the course of his employment, raises one issue which we restate as: whether the exclusions in the uninsured and underinsured portions of his personal automobile coverage which prohibit recovery when the vehicle is owned by another but provided for the regular use of the insured are against public policy.

We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

On August 7, 1999, Indianapolis Police Department Officer Jackson was operating his 1999 police-issued Harley Davidson motorcycle southbound on North White River Parkway West Drive with the police lights and siren activated. Timothy A. Jones was driving a 1979 Chevrolet El Camino northbound on North White River Parkway when he failed to yield the right of way, turned left in front of Jackson, and collided with Jackson's motorcycle.

Jackson suffered extensive injuries as well as lost wages from a part-time job. The motorcycle which Jackson operated at the time of the accident was owned by the Indianapolis Police Department and was continuously available to Jackson for both employment and personal use. The City of Indianapolis is self-insured and is not required to carry uninsured and underinsured motorist coverage. After determining that Jones was an uninsured motorist, Jackson filed a claim with Farmers under the uninsured motorist provision of his own personal automobile policy. Farmers denied the claim.

On May 25, 2001, Jackson filed his complaint and request for a jury trial against Farmers alleging that he is entitled to a damage award that would compensate him for medical expenses and lost wages based upon the uninsured motorist provision contained in his personal automobile insurance policy. The trial court subsequently granted summary judgment for Farmers, and Jackson now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review for Summary Judgment

In reviewing the grant of a motion for summary judgment, this court stands in the shoes of the trial court, applying the same standards in deciding whether to affirm or reverse summary judgment. *Ramirez v. Am. Family Mut. Ins. Co.*, 652 N.E.2d 511, 514 (Ind.Ct.App.1995). Summary judgment should be granted only when the designated evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Ind. Trial Rule 56(C); *Reeder v. Harper*, 788 N.E.2d 1236, 1240 (Ind.2003); *Ramirez*, 652 N.E.2d at 514. All facts and reasonable inferences therefrom must be construed against the moving party. *Ramirez* at 514.

If the moving party, relying on specifically designated evidence, makes a prima facie showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law, the burden shifts to the nonmovant to set forth specifically designated facts showing that there is a genuine issue for trial. *Ross v.*

---

1. Oral argument was heard on November 6, 2003 in our courtroom.

*Indiana State Bd. of Nursing,* 790 N.E.2d 110, 115 (Ind.Ct.App.2003). A genuine issue of material fact exists where facts concerning an issue which would dispose of the litigation are in dispute or where the undisputed material facts are capable of supporting conflicting inferences on such an issue. *Id.* Even if the facts are undisputed, summary judgment is inappropriate where the record reveals an incorrect application of the law to the facts. *Id.*

## II. Insurance Policy as a Contract

■ Jackson argues that he is entitled to recover uninsured motorist vehicle coverage from his personal insurance company based upon the accident because the other driver, who was at fault, was uninsured and the government entity which owned the motorcycle he was riding did not have uninsured motorist coverage. Farmers argues that based upon the language of the insurance contract, Jackson is not entitled to coverage.

■ Contracts of insurance are subject to the same rules of construction as are other contracts; construction of a written contract is a question of law for which summary judgment is particularly appropriate. *Ramirez,* 652 N.E.2d at 514. Our supreme court recently discussed the rules of construction for insurance policies.

Although some "special rules of construction of insurance contracts have been developed due to the disparity in bargaining power between insurers and insured's [sic], if a contract is clear and unambiguous, the language therein must be given its plain meaning." On the other hand, " '[w]here there is ambiguity, insurance policies are to be construed strictly against the insurer' and the policy language is viewed from the standpoint of the insured." A contract will be found to be ambiguous only if reason-able persons would differ as to the meaning of its terms. In insurance policies, "an ambiguity is not affirmatively established simply because controversy exists and one party asserts an interpretation contrary to that asserted by the opposing party."

*Beam v. Wausau Ins. Co.,* 765 N.E.2d 524, 528 (Ind.2002) (citations omitted). Summary judgment based on an insurance contract is a legal determination that the contract is unambiguous and that the rules of contract construction need not be employed to ascertain the contract's meaning. *Ramirez,* 652 N.E.2d at 514. An unambiguous insurance policy must be enforced according to its terms, even those terms that limit an insurer's liability. *Id.* An insurance contract will be deemed ambiguous only if reasonable people upon reading the contract would differ as to the meaning of its terms. *Id.* Moreover, the proper interpretation of an insurance policy, even if it is ambiguous, generally presents a question of law that is appropriate for summary judgment. *Bosecker v. Westfield Ins. Co.,* 724 N.E.2d 241, 243 (Ind.2000). Finally, insurers are free to limit coverage; however, all exceptions, limitations, and exclusions must be plainly expressed. *Allstate v. United Farm Bureau Mut. Ins. Co.,* 618 N.E.2d 31, 33 (Ind.Ct.App.1993). An exclusionary clause must clearly and unmistakably express the particular act or omission that will bring the exclusion into play. *Meridian Mut. Ins. Co. v. Purkey,* 769 N.E.2d 1179, 1182 (Ind.Ct.App.2002). Public policy favors enforcing contracts entered into freely and voluntarily by competent adults. *Nat'l Gen. Ins. Co. v. Riddell,* 705 N.E.2d 465, 467 (Ind.Ct.App.1998).

Although self-insurers are generally required to provide uninsured motorist coverage pursuant to the Financial Re-

sponsibility Act, IC 9–25–2–3,[2] and the requirements for uninsured and underinsured motorist coverage, IC 27–7–5–2,[3] the City of Indianapolis is statutorily immune under the Tort Claims Act, now IC 34–13–3–3(10),[4] from liability for an act or omission of anyone other than a city employee. *See City of Gary v. Allstate Ins. Co.,* 612 N.E.2d 115, 119 (Ind. 1993), *superseded by statute on other grounds, see United Nat'l Ins. Co. v. De-Prizio,* 705 N.E.2d 455 (Ind.1999).

On the date of the accident, Jackson was an insured under his personal automobile policy with Farmers. The provision in the policy dealing with uninsured motorist coverage specifically states that:

ENDORSEMENT ADDING REGULAR AND FREQUENT USE EXCLUSION TO PART II

It is agreed that the following exclusion is added to the Exclusions under part II of your policy.

*Uninsured Motorist coverage* (and Underinsured Motorist Coverage if applicable) *does not apply to damages arising out of the* ownership, maintenance, or *use of any vehicle other than your insured car* (or your insured motorcycle if this is a motorcycle policy), *which is owned by or furnished or available for the regular use by you* or a family member.

*Appellant's Appendix* at 50 (emphasis added).

Farmers argues, and Jackson does not dispute, that the policy excluded uninsured motorist coverage for damages arising out of the use of any vehicle other than "your insured car" which is furnished or available for the regular use of Jackson. Further, Farmers argues that the police motorcycle provided by the City of Indianapolis which Jackson was riding was not an insured vehicle included under the policy; in fact, it was specifically excluded by this endorsement. Based strictly upon contract interpretation, Farmers concludes that the trial court correctly granted summary judgment.

This court has previously held that the exclusion of vehicles provided for regular use by a private employer does not violate public policy if the liability section of the policy contains the same exclusion. *Smith v. Allstate Ins. Co.,* 681 N.E.2d 220, 222 (Ind.Ct.App.1997). Therefore, it is also relevant that the liability section of Jackson's Farmers' policy included an "Amended Business Use Exclusion" which specifically stated that:

AMENDED BUSINESS USE EXCLUSION

It is agreed that Exclusion 6. Under PART I—LIABILITY is deleted and replaced with the following:

Bodily Injury or property damage arising out of the ownership, maintenance or use of any vehicle by any person employed or otherwise engaged in a busi-

---

**2.** IC 9–25–2–3 states: " 'Proof of financial responsibility' means proof of ability to respond in damages for each motor vehicle registered by a person for liability that arises out of the ownership, maintenance, or use of the motor vehicle...."

**3.** IC 27–7–5–2(a)(2) states, in part: "The uninsured and underinsured motorist coverages must be provided by insurers ... in limits at least equal to the limits of liability specified in the bodily injury liability provi-

sion of an insured's policy, unless such coverages have been rejected in writing by the insured."

**4.** IC 34–13–3–3 provides: "A governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from the following: ... (10) The act or omission of anyone other than the governmental entity or the governmental entity's employee."

ness other than the business described in Exclusion 5.

This exclusion does not apply to the maintenance or use of a:

    a.  Private passenger car.

    b.  Utility car that you own, if rated as a private passenger car, or

    c.  Utility trailer used with a vehicle described in a. or b. above.

However, this exclusion does apply to any vehicle:

1.  While used in employment by any person whose primary duties are the delivery of products or services; or

2.  *While used in any employment in an emergency occupation* on a full-time, part-time, or volunteer basis. *Such occupations include, but are not limited to,* Fire Fighting, Ambulance, or *Police activities.* However, this exclusion does not apply to the vehicle described in the Declarations or any private passenger car or utility car with which you replace it.

3.  *Which is one of a fleet or pool of vehicles which are provided for the use of an insured person in the course of his or her employment,* unless such vehicle is specifically listed in the Declarations. This endorsement is part of your policy. It supersedes and controls anything to the contrary. It is otherwise subject to all other terms of the policy.

*Appellant's Appendix* at 49 (emphasis added). Because the uninsured motorist exclusion in the policy does not limit Jackson's uninsured motorist coverage in a manner greater than the limits on his liability coverage, it does not violate the uninsured motorist statute, IC 27–7–5–2, which requires that uninsured motorist coverage be available on the same basis as other liability coverage in the same policy. *Whitledge v. Jordan,* 586 N.E.2d 884, 887 (Ind.Ct.App.1992), *trans. denied.* Thus, the trial court properly granted summary judgment in favor of Farmers.

## III.  Public Policy Issue

■ Jackson does not contend that his Farmers' policy is ambiguous or that it does not explicitly exclude uninsured or underinsured coverage under the facts here. Rather he contends that the exclusion in the uninsured and underinsured section, even though it is comparable to that found in the liability section, is void because it is against public policy to exclude public safety officers from coverage under their personal insurance policies, even while on duty, because the government entity who owns and thus insures the vehicle is not required to provide uninsured or underinsured motorist coverage. Jackson contends that because the statute, IC 27–7–5–2, does not provide for exceptions, government vehicles cannot be excluded from coverage by personal insurance policies. Because government entities are self-insured and therefore exempted by the Tort Claims Act from being required to carry uninsured motorist coverage, such exclusion would leave him and other government employees without the uninsured motorist coverage provided for by law. He argues that because the legislature did not specifically provide for the exception, such exception should not be allowed.

Jackson notes that the purpose of uninsured motorist coverage is to place the insured in substantially the same position as if the other party had complied with the minimum financial responsibility requirements of the insurance statutes. *See Am. States Ins. Co. v. Braden,* 625 N.E.2d 1252, 1257 (Ind.Ct.App.1993). Jackson concedes that his "policy specifically limits uninsured motorist coverage as to persons who would otherwise qualify as insured for liability purposes." *See Whitledge,* 586 N.E.2d at 887.

■ Jackson argues that *Smith v. Allstate Ins. Co.* does not control because the

vehicle there was owned by a private business which could purchase uninsured and underinsured motorist coverage. However, language in an insurance policy which limits or diminishes the protection required by the uninsured motorist statute is contrary to public policy only if it specifically limits uninsured motorist protection as to person who would otherwise qualify as insured for liability purposes. *Harden v. Monroe Guar. Ins. Co.*, 626 N.E.2d 814, 819 (Ind.Ct.App.1993), *trans. denied.*

Our supreme court has stated that "we may even agree that public policy favors a requirement that self-insurers under the financial responsibility law should be required to provide some sort of uninsured motorist protection for those who drive their [vehicles], it is not our role to sit as a judicial legislator and write such a requirement into the act." *City of Gary*, 612 N.E.2d at 119. Since no legislative action has been taken on this issue, it is clearly the intent of the legislature to allow government entities to be self-insured for liability and not insured for uninsured or underinsured claims. More recently, our supreme court wrote that "public policy is a matter for the General Assembly subject only to constitutional limitations on legislative authority." *Murray v. Conseco, Inc.*, 795 N.E.2d 454, 457 (Ind.2003). Jackson's Farmers' policy is neither ambiguous nor contrary to statute. Our legislature has not revised either statute to make the exceptions in either the governmental entity's lack of uninsured or underinsured protection or the exceptions in Jackson's Farmers' policy against public policy.

Affirmed.

BAILEY, J., and VAIDIK, J., concur.